```
                   UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA       )
                               )
         v.                    )
                               )
                               )    CRIM. NO. 05-10106-DPW
                               )
MICHAEL O'DONNELL
```

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

**I.   INTRODUCTION**

The United States of America, by and through its attorneys United States Attorney Michael J. Sullivan and Assistant United States Attorney Donald L. Cabell, urges the Court to impose a sentence above the low-end but within the advisory Guidelines range of 151-188 months. A sentence within the range is most appropriate in light of a consideration of all the factors set forth at 18 U.S.C. §3553(a). The Court should reject the defendant's departure arguments, and the argument for "mitigation" based on the defendant's mental state. Even assuming the grounds are legally permissible, they are not appropriate on the facts of this case.

**II.  ARGUMENT**

In United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006), the First Circuit explained that the Sentencing Guidelines, while now advisory:

> continue in our view to be an important consideration
> in sentencing, both in the district court and on
> appeal, which should be addressed in the first instance
> by the sentencing judge. . . . [T]he district court
> must continue to consider the Guidelines sentencing
> range. In most cases, this will mean that the district

>court will have to calculate the applicable guidelines
>range including the resolution of any factual or legal
>disputes necessary to that calculation-- unless they do
>not matter--before deciding whether to exercise its
>new-found discretion to impose a non-guidelines
>sentence.

Id. at 518.

The First Circuit went on to explain that the Guidelines:

>"cannot be called just 'another factor' in the
>statutory list, because they are the only integration
>of the multiple factors and, with important exceptions,
>their calculations were based upon the actual sentences
>of many judges.  The Sentencing Commission is also an
>expert agency charged by Congress with the task of
>promulgating guidelines and keeping them up to date. In
>its remedial opinion, the Supreme Court has stressed
>the continuing role of the guidelines in promoting
>uniformity and fairness." Id.  (citations and internal
>quotation marks omitted).

Finally, the Court explained that, "[w]hether the sentence falls inside or outside the applicable guideline range, it is important for us to have the district court's reasons for its sentence; 18 U.S.C. § 3553© so requires for sentences outside the guidelines range (or within it if the range is broad) and this is even more important in the more open-ended post-Booker world." Id. at 519.

In this case, application of the §3553 factors leads to the conclusion that the defendant deserves to be labeled and sentenced as a "career offender" and thus should receive a sentence above the low-end but within the GSR of 151-188 months.

First, the nature and circumstances of the offenses, coupled with the defendant's serious criminal history demand punishment as a career offender.  18 U.S.C. §3553(a)(1).  To begin, the defendant committed four bank robberies, including three in which he threatened to shoot the teller.  Even accepting that

defendants do at times commit several robberies during a single spree, especially where the motivation is to get money to buy drugs, the government notes that the robbery in count one occurred more than two years before the robberies in counts two through four.  Further, the fact that the defendant committed the latter three robberies just after being released from a lengthy period of state detention on an unrelated matter shows that the defendant has been and is inclined to commit crimes, serious crimes, upon release, rather than attempt to abide by the law.

The Court also needs to impose a lengthy sentence in this case to punish the defendant for the multiple robberies he committed as a career offender, and to deter similarly situated persons from doing the same.  18 U.S.C. §§3553(a)(2)(A)(B) Indeed, because the defendant, as a career offender, would still have had a GSR of 151-188 months even had he committed just one bank robbery, there is, absent a lengthy prison term within the range at a minimum, no real strong signal to the defendant or others that serial criminals face more severe punishment than others.  A sentence above the low-end but within the GSR would at least reflect that the defendant committed multiple robberies and therefore received a higher sentence.

In addition, the defendant has not demonstrated an ability or willingness to appreciate the risk of a lengthy sentence or the benefits of a lenient one.  Following the defendant's federal conviction in 1998 for the masked robbery of a gas station at knife point, the Court found the defendant to be a career offender but departed downward to five years in light of his

childhood and related issues, as well as the defendant's emotional plea in open court that what he wanted and needed, but never had been able to receive, was the opportunity to address his drug problems.  Rather than treat the sentence as the opportunity it was meant to be, though, the defendant failed to embrace the treatment opportunities, subsequently violated his supervised release, and was revoked twice, receiving terms of imprisonment of eight months and five years respectively.  See Dkt. United States v. O'Donnell, 98-cr-10014-REK.

Further, the Court needs to impose a sentence within the range because the defendant demonstrably is a danger to himself and the community, and urgently needs to receive long-term treatment for the many issues he faces.  18 U.S.C. §§3553(a)(2)(C)(D).  As noted above, the defendant committed four violent crimes in which he threatened to shoot three of the tellers.  The defendant has admitted that the robberies stemmed from his heroin addiction and the need to get money to buy more heroin.  The defendant, having already shown on multiple occasions that he is inclined to recidivate rather than rehabilitate, should not now be provided another chance to do the same.

Finally, the Court should not depart or vary from the Guidelines on the grounds advanced by the defendant.  As the government understands, there is no reason to depart based on prior periods of detention or incarceration because the Bureau of Prisons accounts for those on its own during the designation process.  Further, while the defendant's past is horrific and

should not be minimized, there simply is nothing so extraordinary about the defendant's childhood or present condition to take this case out of the heartland.  Childhood abuse and neglect, as various courts have noted, are often present in the lives of criminals and always affect their mental and emotional condition. See United States v Vela, 927 F.2d 197, 199 (5th Cir. 1991); United States v. Daly, 883 F.2d 313, 389 (4th Cir. 1989). Accordingly, courts have found histories involving abuse to be typical in and of themselves and, as a result, an inappropriate ground on which to base a downward departure.[1]   See e.g., United States v. Pullen, 89 F.3d 368, 369-72 (7th Cir. 1996) (held that armed bank robber's schizoid disorder and borderline personality disorder resulting from rape and sexual abuse by father when defendant was five was not so extraordinary as to make case atypical); United States v. Vela, 927 F.2d 197, 199-200 (5th Cir. 1991) (held that effects of defendant's childhood of sexual abuse by stepfather and subsequent disbelief by mother did not entitle defendant to departure); United States v. Desormeaux, 952 F.2d 182, 184-86 (8th Cir 1991) (defendant's diminished self-esteem as a result of spousal abuse did not entitle her to departure). Viewing the defendant's claims in this light, his childhood, while tragic, hardly stands out and indeed arguably falls comfortably within the heartland of other cases.

---

[1]The government understands these are pre-Booker cases and cites them merely in support of the proposition that the defendant's past, while unquestionably unfortunate, is not necessarily atypical when compared to others who commit the same sorts of crimes.

**III. CONCLUSION**

For the foregoing reasons, the United States requests that the Court reject the defendant's arguments in support of a departure or variance and sentence him as a career offender above the low-end but within the advisory GSR.

                                   Respectfully submitted,
                                   MICHAEL J. SULLIVAN
                                   United States Attorney

BY:   /s/Donald L. Cabell
       Donald L. Cabell
       Assistant U.S. Attorney
       One Courthouse Way, Suite 9200
       Boston, MA 02210
       (617) 748-3100